IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LAURA YATES,            )<br>                                    )<br>    Plaintiff,             )<br>                                    )<br>v.                                 )<br>                                    )<br>MICHAEL J. ASTRUE,    )<br>                                    )<br>    Defendant.           )<br>                                    ) | CIVIL ACTION NO.<br>3:10-CV-53-TFM |

## **MEMORANDUM OPINION AND ORDER**

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., Laura Yates ("Yates") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision.  When the Appeals Council rejected review the decision became the final decision of the Commissioner of Social Security ("Commissioner").  Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court AFFIRMS THE COMMISSIONER'S decision.

### **STANDARD OF REVIEW**

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[1]

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

>   (1) Is the person presently unemployed?
>
>   (2) Is the person's impairment(s) severe?
>
>   (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[2]
>
>   (4) Is the person unable to perform his or her former occupation?
>
>   (5) Is the person unable to perform any other work within the economy?
>
>   An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of

---

[1] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.
[2] This subpart is also referred to as "the Listing of Impairments."
[3] Though a supplemental security income case (SSI), *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), applies the sequential process applicable to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or hear testimony from a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), quoting 42 U.S.C. §405(g).  Thus, this Court must find the Commissioner's

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote* at 1560, citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm if the court would have reached a contrary result as finder of fact, or if evidence preponderates against the Commissioner's findings. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Yates, age 49 at the time of the hearing, completed high school and one year of college. Her past relevant work includes employment as a medical transcriptionist and

cashier.[5]  Yates has not engaged in substantial gainful work activity since the amended application date of January 1, 2002.  Yates' application claims she is unable to work because of back/leg problems, fibromyalgia, mitral valve prolapse, obesity and osteoarthritis.[6]

Yates weighed approximately 341 pounds on the date of hearing.  She does not receive mental health treatment but is prescribed medicine for depression by her general physician.  She said her back hurts constantly because of mild spinal stenosis and gets cortisone injections in her knees for pain.  She said she has a lot of pain in her neck, shoulders, and arms.  Her hands tingle and feel numb if she is riding in a car or when she types, and she has bouts with diarrhea.  Yates said she has osteoarthritis in her knees and back.  She does not shop or cook, but does grocery shop "every once in a while," and sometimes puts clothes in the washing machine.  Yates estimates she can pick up 10 or 15 pounds.  Yates said her obesity causes shortness of breath and additional limitations in sitting, standing, walking, and driving.  Yates estimates her pain on an average day is around six or seven on a scale of one to ten, with ten being highest.  She said her medications make her drowsy and slow her heartbeat.  She said she cries in stressful situations because she gets mixed up.[7]

The ALJ's review of Yates' medical records between 2001 and 2008 noted diagnoses and treatment for depression, fibromyalgia, hypertension, morbid obesity,

---

[5] R. at 582-83.
[6] R. at 49-50.
[7] R. at 563-74.

5

peripheral edema, osteoarthritis, and insomnia.[8] A consultative examination by Dr. Robert H. Walkup on May 15, 2008 found normal heart and lung sound, no tenderness to touch of lower back, 5/5 motor strength in all extremities, normal straight leg raising, normal fine manipulation, ability to squat and rise half way, and ability to climb on examination table. Dr. Walkup diagnosed hypertension, morbid obesity, depression, gastric reflux, urinary incontinence, diarrhea, fibromyalgia, previous diagnosis of mitral valve prolapse, and history of spinal stenosis. Yates' lumbar spine showed no osteoarthritis. He opined Yates can sit for an unlimited time; stand 20 minutes at one time for one hour total; walk five minutes at one time for one hour total; occasionally lift 25/carry 20 pounds; and frequently lift 15/carry 10 pounds. Dr. Walkup found Yates could never climb, balance, stoop, kneel, crouch, or crawl; can occasionally push/pull with all extremities and reach overhead; and can constantly handle, finger, feel, talk, and hear. Finally, Yates should never be exposed to extremes of temperature, wetness/humidity, vibration, pulmonary irritants, moving mechanical parts, or high/exposed places.[9]

John Gam, Ph.D., performed a consultative psychological examination of Yates on August 28, 2008. Yates told Dr. Gam that she can sit all day long, but has to move around some, cannot stand too long, cannot bend too much, and can carry five pounds in one hand. Yates reported irritability, nervousness, panic attacks, worry, crying spells, and social withdrawnal, but denied any mental health treatment. Dr. Gam diagnosed depressive disorder and features of attention deficit disorder, but opined that Yates'

---

[8] R. at 206-07.
[9] R. at 207.

depression is not severe enough to prevent her performance of substantial gainful activity on a sustained basis. He found that unless she is hampered by physical disability she should be able to perform some type of secretarial work. Dr. Gam found Yates has moderate limitations in responding appropriately to supervisors, coworkers, and the general public, dealing with changes in a routine work setting, and maintaining attention, concentration or pace for periods of at least two hours; with no marked limitations of functioning.[10]

Dr. Kishore Chivukula performed a consultative neurological evaluation of Yates on September 9, 2008. Dr. Chivukula found normal heart and lung sounds, normal muscle bulk in all major muscle groups, extremities with normal power, tone, and range of motion, with 5/5 hand grip. Dr. Chivukula opined Yates' main problems were mechanical due to severe obesity complicated by co-morbid conditions including depression, arthritis, and obstructive sleep apnea, which further contribute to her symptoms of fibrolyalgia and depression. He found Yates can perform work, and opines she has no limitation is sitting, standing, or walking. Dr. Chivukula also found Yates can occasionally lift/carry 25 pounds; frequently lift/carry 15 pounds; never climb, crouch, or crawl; occasionally balance, stoop, and kneel; constantly push/pull with all extremities; handle, finger, feel, talk, hear, and reach overhead.[11]

Dr. Jack Evans, a medical expert, testified at Yates' hearing. Dr. Evans listed Yates' medical diagnoses as obesity, fibromyalgia and probable osteoarthritis of the

---

[10] R. at 208.
[11] R. at 209.

knees, hypertension, lumbar spinal stenosis, mitral valve prolapse, and neuropathy.[12] He notes that Yates' spinal stenosis was unusual because it is not due to disc or arthritic changes, but rather to fat deposits around the spinal cord, and therefore insignificant as an active neurological problem.[13] Dr. Evans said "[p]utting all this together I'm of the opinion that she could do a light work but, however, it would be further limited in the fact that she could not stand or walk more than a total of four hours a day."[14] Other restrictions specified by Dr. Evans included Yates' frequent use of arms and hands; occasional use of legs for pushing/pulling; inability to climb; inability to kneel or crouch; occasional stooping; and able to lift 20 pounds occasionally/10 pounds frequently. Dr. Evans opined that Yates' conditions, either singly or in combination, including obesity, did not meet the listings for disability.[15]

Cindy Garner, clinical psychological, also testified during Yates' hearing as a medical expert. Garner's testimony highlighted Yates' record of receiving antidepressant medications from primary care physicians with no specific mental health treatment. Dr. Garner agrees with Dr. Gam's findings that Yates' depression would not preclude substantial gainful activity. She found Yates is mildly impaired in activities of daily living; mild to moderately impaired in social functioning; and moderately impaired in maintaining concentration, persistence and pace, with no episodes of decompensation.[16]

---

[12] R. at 575-76.
[13] R. at 576.
[14] R. at 576.
[15] R. at 577.
[16] R. at 580.

8

A vocational expert (VE) testified during Yates' hearing. The ALJ asked the VE to assume a person with mild impairment in activities of daily living; mild impairment in social functioning; moderate impairment in ability to respond appropriately to supervisors, coworkers, and the general public; and moderate impairment in ability to deal with changes in a routine work setting. In addition to the mental limitations, the ALJ specified the hypothetical person is limited to six hours of sitting; four hours total stand/walk; occasional use of legs; no ladders, ropes, scaffolds; or activities that involve unprotected heights, hazardous machinery, or commercial vehicles. Finally, the ALJ added mild to moderate pain that occasionally interferes with concentration, persistence, and pace.[17] The VE responded that Yates could perform her past work as a medical transcriptionist.[18] The ALJ asked if other jobs were within the hypothetical RFC and the VE said that cashiers, general clerks, and assemblers were possible occupations.[19]

The ALJ found Yates is severely impaired by mild lumbosacral stenosis (due to fat deposits); morbid obesity; minimal spondylitic disease at C5-6; question of fibromyalgia; history of mitral valve prolapse (mild); depressive disorder, not otherwise specified; osteoarthritis of the knees; question of obstructive sleep apnea; hypertension (with no end organ damage), and non-obstructive coronary artery disease.[20] The ALJ found Yates' combination of impairments does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[21]

---

[17] R. at 583.
[18] R. at 584.
[19] R. at 585.
[20] R. at 203.
[21] R. at 204.

The ALJ found Yates' RFC encompasses light work limited by her ability to sit for one hour without interruption, for a total of six hours, or stand/walk 30 minutes without interruption for a total of four hours.  Yates can frequently perform simple grasping and fine manipulation; occasionally use her feet for repetitive movements such as operating foot controls; can never crouch, kneel, climb ladders/ropes/scaffolds, perform activities involving unprotected heights, be around moving/hazardous machinery, or drive commercial vehicles.  Further, the ALJ ruled Yates' mental limitations are mild impairment in activities of daily living; mild impairment in social functioning; moderate impairment in ability to respond appropriately to supervisors, coworkers, and the general public; and moderate impairment in ability to deal with changes in a routine work setting.[22]

The ALJ began his discussion of the medical evidence with a statement that he considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  The ALJ acknowledged the two-step process in which he must determine whether an underlying medically determinable physical impairment could reasonably be expected to produce a claimant's pain or other symptoms, and second, the extent to which the intensity, persistence and limiting effects of the claimant's symptoms limit the ability to do basic work activities.  Essential in this process is the ALJ's consideration of the entire record, in addition to an evaluation of a claimant's credibility regarding these factors.[23]

---

[22] R. at 205.
[23] R. at 205-06.

The ALJ found Yates' testimony of disabling pain and functional restrictions not credible beyond the limitations reflected in the RFC. The ALJ followed this finding with record information from examinations by Drs. Walkup, Chivukula, and Gam. Each physician's opinion was given substantial weight, with slightly more credit given to Dr. Chivukula because he is a specialist in the area of Neurology.[24] The decision addressed Yates' alleged back pain by noting no signs of osteoarthritis in Yates' lumbar spine, and addressed her other conditions by noting that her hypertension is controlled by medication, she has normal motor strength in all extremities, normal straight leg raising, normal muscle bulk, and lack of specific mental health treatment. The ALJ cited the VE's testimony identifying occupations that suit Yates' RFC. The finding that Yates can return to her past relevant work, as well as perform the occupations identified by the VE led the ALJ to conclude Yates is not entitled to disability benefits under the Act.[25]

### III.  ISSUES

Yates raises five issues for judicial review:

1.  Whether the ALJ failed to provide a specific rationale to reject Yates' pain testimony;

2.  Whether the ALJ properly considered the combination of Yates' impairments;

3.  Whether the ALJ properly considered Yates' obesity;

---

[24] R. at 210.
[25] R. at 211-12.  The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

4. Whether the ALJ committed reversible error by failing to make specific findings regarding the physical and mental demands of Yates' past relevant work; and

5. Whether the ALJ committed reversible error when he did not specifically reference an opinion by a consulting psychologist.

## IV.  DISCUSSION

**1.  <u>The ALJ Articulated Adequate Reasons for His Credibility Determination</u>.**

Yates argues the ALJ's credibility finding did not comply with Eleventh Circuit precedent and constitutes reversible error.  The Commissioner responds that the ALJ properly evaluated the credibility of Yates' subjective complaints, correctly applied the Eleventh Circuit pain standard, and issued a finding supported by substantial evidence.  The court agrees that the ALJ gave well-reasoned grounds to reject Yates' allegations and testimony of disability, and therefore, did not err in his application of the law.

The five-step sequential analysis set forth in regulations require that a claimant prove that he is disabled.  20 C.F.R. § 404.1512; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The Eleventh Circuit has set forth criteria for establishing a disability based on testimony of pain and other symptoms.  It explained that

> a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). A "claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "Indeed, in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). An ALJ must explicitly explain why he chose not to credit a claimant's testimony. *Brown*, 921 F.2d at 1236. When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). "The decision concerning the plaintiff's credibility is a function solely within the control of the Commissioner and not the courts." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1213 (M.D. Ala. 2002).

Yates alleges the record does not support the ALJ's credibility findings, as the decision fails to provide "specific reasons for doing so other than to summarize the parts of the medical record which he found to support his conclusion."[26] The ALJ decision recited the steps required under the pain standard, and noted the types of evidence designated for consideration under 20 C.F.R. § 404.1529 and applicable Social Security Rulings when making credibility determinations.[27] After listing the regulatory factors, the ALJ summarized Yates' hearing testimony about her physical difficulties and pain and examination findings by Drs. Walkup, Gam, and Chivukula. The ALJ then made a

---

[26] Pl. Br. at 3.
[27] R. at 205-06.

13

negative credibility determination, followed by information from the medical record which support his finding that Yates' statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible.  The ALJ took specific note there are no signs of osteoarthritis in Yates' lumbar spine, her hypertension is controlled by medication, she has normal motor strength in all extremities, normal straight leg raising, normal muscle bulk, and lack of specific mental health treatment.  The ALJ found the conclusions by Drs. Walkup, Chivukula, and Gam are consistent with the record of evidence.

Yates asserts this ALJ decision does not satisfy Eleventh Circuit precedent on credibility findings and urges reversal.  At first blush, it would seem that the credibility finding does not comply with the Eleventh Circuit's requirement that an ALJ give explicit grounds for discrediting a claimant's testimony.  *Brown*, 921 F.2d at 1236.  Upon close review, however, the structure and content of the ALJ's decision leads the Court to conclude the credibility finding meets the Eleventh Circuit's standard.  After finding Yates not credible, the ALJ cited specific medical findings and examination by physicians that negate her testimony of extreme physical limitation.  In sum, the medical information itself rebuts Yates' testimony.

The Court has examined the ALJ decision in this case under the well-known instruction from *Wilson* which states "[I]f the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson, id*. at 1225.  It is true that the ALJ in this case did

not employ any signal phrases such as "Yates is not credible because . . ." or "objective medical findings indicate untruthful testimony. . . ." However, a conclusion on credibility which is preceded by a recitation of credibility factors, with a review of facts relevant thereto, convince this Court that the ALJ articulates adequate grounds for his findings. Notwithstanding the ALJ's failure to highlight his credibility in "explicit" fashion, the juxtaposition of Yates' claims and objective medical evidence sufficiently demonstrates the ALJ's basis for his credibility finding.

The ALJ articulated adequate reasons to reject Yates' subjective testimony about pain and disability. The Court acknowledges the necessity of reading the ALJ decision carefully, as no single phrases announces the basis for the credibility determination. Nonetheless, the ALJ cited substantial evidence for his decision on this issue, and the court finds no reversible error on this issue.

2. **The ALJ's decision reflects consideration of the combination of impairments, including morbid obesity.**

Yates argues the ALJ did not properly evaluate the combination of her impairments. The Commissioner responds the ALJ relied on the record evidence from physicians to reach the final RFC determination, and those opinions, in turn, considered the combination of Yates' impairments, singly and in combination.

The ALJ decision summarized Yates' hearing testimony, including past employment, medical conditions, alleged pain, and physical limitations. The ALJ also summarized medical evidence from Drs. Walkup and Chivukula which featured normal findings in heart/lung sound, 5/5 motor strength, ability to get on examining table, normal

range of motion, and normal muscle bulk. Both examinations found Yates able to work in a manner consistent with the RFC finding despite morbid obesity.[28] The most obvious record evidence that the combination of Yates' impairments was considered by the ALJ is found in the hearing transcript. Dr. Evans listed Yates' six major diagnoses, and stated "[p]utting all this together I'm of the opinion that she could do a light work," though limited as specified.[29] The ALJ gave Dr. Evans' testimony considerable weight and was found consistent with the record evidence.[30]

As a separate issue, Yates argues her obesity was not properly evaluated and was discounted because she did not comply with physicians' instructions to lose weight. She argues the Commissioner cannot presume that obesity can be remedied. Notwithstanding this argument, Yates does not show how the Dr. Walkup or Dr. Chivukula erred in their determinations that she is able to work despite her obesity, nor does she show how obesity prevents her from performing the sedentary work required as a medical transcriptionist.[31] As stated above, her obesity was properly considered in the final RFC as one of several impairments.

The Eleventh Circuit has ruled that an ALJ's statement that a claimant's severe impairment, or combination of impairments, do not meet the listings in Appendix 1, Subpart P, Regulations No. 4, can be taken as evidence that the combined effects of all impairments was considered. *Wilson*, 284 F.3d at 1224-25; *see also Wheeler v. Heckler*,

---

[28] R. at 207, 209.
[29] R. at 576.
[30] R. at 210.
[31] Yates said during her hearing that her obesity limited her ability to sit, but she reported to Dr. Gam that she can sit all day long if she is permitted to move around a bit. R. at 572, 208.

16

784 F.2d 1073, 1076 (11th Cir. 1986).  The ALJ's decision reflects his comparison of Yates' impairments, or combination of impairments, with the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Therefore, the decision meets the demands set out by the Eleventh Circuit, and is supported by the credited opinions of examining physicians.

3.     **The ALJ's finding that Yates is able to return to her past relevant work was not error in light of the record before him, and he therefore did not commit reversible error.**

Yates argues the ALJ did not adequately develop the physical demands of her previous work as a medical transcriptionist.  The Commissioner responds the work requirements were sufficiently contained in the record, and were not inconsistent with the ALJ's RFC decision.  "A diagnosis alone is an insufficient basis for a finding that an impairment is severe.  The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Sellers, id.* at 1211, citing *McCruter v. Bowen*, 791 F.2d 1544 1547 (11th Cir. 1986). .  "Adequate documentation of past work includes factual information about those work demands which have a bearing on the *medically established* limitations." *Davison v. Halter*, 171 F.Supp.2d 1282, 1285 (S.D. Ala. 2001), quoting SSR-82-62.

Yates' claim on this issue asserts the ALJ's decision lacked substantial evidence to support his finding her able to resume work without developing evidence of the physical

requirements of the work. The Commissioner points out that Yates submitted a detailed summary of what work as a medical transcriptionist entails.[32] Yates does not explain which aspects of her past work lay beyond her abilities, but simply asserts that the ALJ did not have evidence of what the work entails. To the extent necessary, Yates gave the ALJ an adequate description of the demands of her past work, thus, the Court finds there is no reversible error as to this issue.

### 4. **The ALJ did not err by failing to discuss a consulting psychological opinion.**

Yates' argues the ALJ failed to consider a consultative psychological opinion from Dr. Lee Stutts. Dr. Stutts examined Yates on February 1, 2005. The examination predates the issuance of a previous administrative decision in Yates' case which resulted in remand on judicial review. The Commissioner argues Dr. Stutts' opinion was entitled to little weight because his opinion was not supported by the findings set forth in his report.

Yates emphasizes the ALJ's silence as to Dr. Stutt's opinion that "she should be able to return to work . . . but currently she would struggle with normal work pressures."[33] The evaluation recommended Yates be referred for mental health treatment.[34] Dr. Stutts detailed far more activities of daily life than Yates acknowledges

---

[32] R. at 409-12, job information submitted by Yates on July 10, 2007.
[33] Pl. Br. at 13, R. at 163.
[34] R. at 163.

18

in her second administrative hearing. He found Yates was verbal, fully oriented, calm, logical and coherent, with affect within normal limits and no symptoms of anxiety.[35]

The Court agrees with the Commissioner that the ALJ's failure to discuss or weigh Dr. Stutts' report is harmless error. As the Commissioner notes, Dr. Stutts' summary finding of disability appears primarily based on a diagnosis of fibromyalgia, complaints of chronic pain/fatigue, and complaints of depressive symptoms which were not borne out by the evaluation.[36] The presence of physical complaints as grounds for disability are beyond Dr. Stutts' expertise and are not credited by the Court. As noted above, the evaluation took place before the judicial remand of Yates' case, more than three years before Dr. Gam's current evaluation. Dr. Gam found no mental impairment which would prevent Yates from performing substantial gainful activity. He deferred to results of physical examinations on the question of disability, finding that "[u]nless hampered by physical disability [Yates] should be able to do some type of secretarial work."[37]

The record contains, and the ALJ cites, substantial evidence for the findings regarding Yates' mental condition. Accordingly, the Court finds no error as to this issue.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

---

[35] R. at 164.
[36] R. at 163.
[37] R. at 503.

A separate judgment is entered herewith.

DONE this 26th day of January, 2011.

                                                /s/ Terry F. Moorer
                                                TERRY F. MOORER
                                                UNITED STATES MAGISTRATE JUDGE